```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

GILBERT W. NEDROW,            )
                              )
            Plaintiff,        )
                              )
v.                            )      Case No. CIV-05-364-KEW
                              )
JO ANNE B. BARNHART,           )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Gilbert W. Nedrow (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 14, 1953, and was 51 years old at the time of the hearing. He completed high school and attended junior college for about one year. Claimant has not engaged in any past relevant work. Claimant alleges an inability to work beginning December 1, 1997, due to depression, pain in his joints, arthritis in his shoulder and swelling in his hands and feet.

### Procedural History

On January 8, 2000, Claimant protectively filed for Supplemental Security Income ("SSI") under Title XVI (42 U.S.C. § 401, *et seq.*). Claimant's application for benefits was denied in its entirety initially and on reconsideration. Claimant did not

request a hearing. Claimant filed a second SSI application on July 24, 2003. The second application was denied initially and on reconsideration. On September 30, 2004, Claimant appeared for an administrative hearing before ALJ, Michael A. Kirkpatrick in McAlester, Oklahoma. By decision dated February 24, 2005, the ALJ found Claimant was not eligible for SSI payments. On July 8, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step two of the sequential evaluation. He determined that Claimant did not suffer from a severe impairment and is not under a disability and, therefore, was not entitled to benefits.

**Review**

Claimant asserts that the ALJ erred in failing to fully and fairly develop the record by obtaining medical records post-hearing. Further, Claimant contends the ALJ failed to consider vital probative evidence which contradicted his conclusions. Finally, Claimant finds error in the ALJ's conclusion that he did not suffer from a severe impairment.

**Duty to Fully Develop the Record**

Claimant first indicates the ALJ failed to obtain the records of Dr. D. L. Trent, a physician Claimant saw in connection with

4

obtaining an assessment for securing Social Security benefits. Dr. Trent proffered a report in letter form from the Latimer County Medical Clinic, dated January 5, 2005. In this correspondence, Dr. Trent states he "reviewed the medical records of [Claimant]" in arriving at his conclusions. He does not indicate he personally attended Claimant for diagnostic or treatment purposes. From his review, Dr. Trent acknowledges Claimant has not worked "for at least the last six year" because of the allegedly debilitating conditions of: (1) severe depression aggravated by recurrent emotional instability and intermittent reactive alcohol addiction which have been treated unsuccessfully because Claimant is alone at home and cannot manage his medications; (2) multiple past broken bones including his extremities, chest wall, and trauma to the axial skeleton; (3) constant pain requiring pain control medications; and (4) severe pan-cytopenia and febrile disease requiring multiple operations including cholecystectomy, nasal polypectomy, and bilateral inguinal herniorraphy. As a result of these conditions, Dr. Trent concludes it is "inconceivable" Claimant could "function as a wage earner" primarily because of his mental instability and encourages the awarding of benefits to Claimant because he is "both permanently and totally disabled." (Tr. 396-97).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must

furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

Claimant first alleges the ALJ should have obtained Dr. Trent's treatment records before rendering his decision. Claimant's attorney first brought the matter to the ALJ's attention at the hearing on September 30, 2004. Counsel requested that the record remain open to permit the submission of a report and records from Dr. Trent. The ALJ granted a thirty day window for the submission of these documents. Claimant never submitted the documents during this period.

Also during the hearing, Claimant informed the ALJ as follows:

Question (by the ALJ): Okay. Are you seeing any other doctors now?

Answer (by Claimant): Trent's the only doctor I've been seeing and he's not a mental doctor. He's just a regular physician.

Question: What does he treat you for?

Answer: He's giving me some antibiotics for a head infection and things like that. And that's - -

Question: How about your arthritis? Is he giving you anything for your arthritis?

Answer: He told me to take ibuprofen, but he hasn't prescribed any medicine other then (sic) that. . . .

\* \* \*

Question: Okay. All right. Now who is Dr. Trent?

Answer: He's a medical doctor in Wilburton.

Question: And he's the one that's treating you now?

Answer: Yes, sir.

Question: So that's the records we're waiting on. What are those records going to show? Have you seen him lately?

Answer: I saw him last week on the 15th.

Question: Okay. What for?

Answer: Just to come in and see how I was doing. And at that time, I told him that I needed him to get - - see, he has access to all my different medical records from different places and he was going to write up a report - -

Question: Okay.

Answer: - - for me - -

Question: Okay.

Answer: - - and send it to this man here.

Question: All right. So it's - - we're waiting for a report. But you went to see him last week. And he's the one who's prescribing your Vioxx?

Answer: No. I get those from a free clinic here in town, Dr. Larry Lewis.

Question: Okay. How often have you seen Dr. Trent this year?

Answer: About five times.

Question: What for?

Answer: To get him to check me out to see how I was doing. See, when I came out of the hospital, they told me that my liver and kidneys were in really bad shape. So along with pulling blood on me to have all that checked out, he also had X-rays made of me in different places all over my body to see how gimped up I am.

Question: Okay.

Answer: And I told him on the 15th that I needed him to write me up a report on all this and send it to my attorney. And for some reason he - - I guess he got tired up and failed to do it anyway. I got in touch with his office this morning and they said they were going to fax something to this man's office - -

\* \* \*

Question: What parts of your body did they X-ray?

Answer: My hands, my right shoulder, my left shoulder, I think my lower back, and my feet.

Question: And that was all done by Dr. Trent or at his direction?

Answer: That was done at the Wilburton Hospital by his direction, yes.

Question: Within the last year?

8

Answer: Just a few months ago.

(Tr. 415; 420-22).

The ALJ in his opinion expressed skepticism of Dr. Trent's status as Claimant's treating physician. (Tr. 23). However, the ALJ was unequivocally placed on notice by Claimant and his attorney of testing done at the behest of Dr. Trent and that Dr. Trent was the only physician seeing Claimant with any regularity. While it is unclear as to what the testing data obtained at the Wilburton Hospital might reveal, the ALJ was under an obligation to obtain these records prior to arriving at his conclusions regarding Dr. Trent's status as a treating physician and rejecting his opinions outright. The ALJ's conclusions are curiously circular. He rejects Dr. Trent as a "treating source" because no medical records were present to establish he rendered treatment to Claimant and yet he failed to request the medical records which might have revealed any treatment rendered by Dr. Trent. This flawed reasoning requires the reversal of the ALJ's decision and remand of this matter for the ALJ to obtain the records and re-evaluate his conclusions in light of all of the evidence.

**Evidence Contradicting the ALJ's Findings**

Claimant next contends the ALJ ignored vital probative evidence contained in Claimant's medical records which contradicted the ALJ's conclusions. In essence, Claimant asserts the ALJ adopted and discussed the "normal" findings and diagnoses by each

9

treating physician but failed to discuss the "abnormal" findings by these same doctors. Specifically, Claimant contends R. Doyle Stewart, D.O. found his gaze was lacking in extreme left lateral movement and that the deficit in Claimant's left lateral gaze was "estimated to be approximately 25 degrees at the extreme lateral gaze to the left." (Tr. 210). Additionally, Robert P. Shaver, M.D. noted Claimant suffered from double vision in his left gaze and pain in his left eye. However, Dr. Shaver also acknowledged Claimant's vision acuity corrects to 20/20. (Tr. 162). Greg Krempl, M.D. also attended Claimant for treatment of a sinus condition but noted Claimant suffered from vision problems looking to the left. (Tr. 250).

Other problems Claimant contends the ALJ failed to mention in his decision included the fact Claimant is missing the first phalanx of his right index finger. This fact was discussed by Drs. Stewart and Kurella but was apparently not considered by the ALJ. (Tr. 211). The ALJ also disregarded evidence demonstrating Claimant suffered from rheumatoid arthritis (Tr. 229), exhibited signs of depression to Dr. Graybill and Dr. Stewart (Tr. 209-16, 218) and continued to suffer from problems associated with his prior sinus surgery (Tr. 236).

Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly

10

probative." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's failure to reference these seemingly significant conditions represents error which must be corrected on remand.

## Step Two Analysis

Claimant's final argument entails a challenge to the ALJ's conclusion that he did not suffer from a severe impairment. Given that the ALJ failed to consider all of the medical evidence available for review and failed to adequately discuss all of Claimant's medically recognized conditions, this Court must conclude the ALJ's step two conclusions are flawed and must be re-examined on remand.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further consideration consistent with this opinion.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 24th day of August, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE